Landwerlen v. Wheeler, Trustee.

No. 9840.

LANDWERLEN v. WHEELER, TRUSTEE.

EXPRESS TRUST.—*Subscription to Church Fund.—Right of Trustee to Maintain Action.*—One who is appointed to receive money subscribed to a church fund and to hold the same in trust for the congregation, is the trustee of an express trust, and may maintain an action to collect the amounts subscribed, without joining the *cestui que trust.*

CONTRACT.—*Subscription Paper.—Several Obligation of Subscribers.*—A paper reading, " We, the undersigned, promise to pay the following subscriptions for a new church," etc., followed by names, opposite which are different amounts, is the several and not joint obligation of the subscribers.

SAME.—*Alteration.—Ratification.—Evidence.*—For evidence held sufficient to show a ratification of a contract to pay money after the making of an alteration therein, by the insertion of the name of a payee, see opinion.

SUPREME COURT.—*Brief, Rules as to.*—In the absence of such a brief as the rules of the Supreme Court require, alleged errors will not be considered. As to argument held not sufficient to fulfil the requirements of such rules, see opinion.

SAME.—*Objection to Form of Judgment.*—Objection to the form of a judgment can not be made for the first time in the Supreme Court.

INSTRUCTIONS TO JURY.—*Record. — Practice.*—To make instructions a part of the record without a bill of exceptions, they must be excepted to as provided by section 535, R. S. 1881, and also signed by the judge and filed as provided by section 533.

PRACTICE.—*Pleading.—Harmless Error.*—It is a harmless error to sustain a demurrer to a good paragraph of answer, if there is a paragraph remaining under which the same facts may be proved.

From the Shelby Circuit Court.

*O. J. Glessner, E. K. Adams* and *L. J. Hackney*, for appellant.

*B. F. Love, H. C. Morrison, T. B. Adams* and *L. T. Michener*, for appellee.

ZOLLARS, J.—In July, 1877, at a meeting of the congregation of the St. Vincent Catholic Church, it was determined that a new house in which to worship was needed, and that the money necessary to build it should be raised by subscriptions. Subsequently, appellee was appointed to collect, hold

Landwerlen v. Wheeler, Trustee.

and pay out for the benefit of the church, in the erection of such house, the money that might be thus raised.

In pursuance of the meeting above mentioned, a paper was drawn up and circulated for subscriptions. It is as follows:

"St. Vincent's, August 1st, 1877, Shelby county, Indiana. We, the undersigned, promise to pay the following subscriptions for a new church in honor of St. Vincent De Paul, patron of the church and congregation. It is hoped that every member of the congregation will show the good-will, and help to promote such a good and holy object, as a new church is very much needed. The subscription is to be paid in three payments; the first payment is to be made by the first of August, 1878; the second August 1st, 1879, and the third August 1st, 1880. The payment to be made to John Wheeler, Esq., treasurer."

Appellant signed this paper, and set opposite his name "$200." Quite a number had signed it before he did, and quite a number subsequently signed it, setting opposite their respective names different amounts. Upon the faith of the subscriptions, the church proceeded in the erection of the house, and contracted debts for material, etc. Appellant has paid no portion of the $200 set opposite his name, and refuses to pay it, in whole or in part.

The above are some of the facts stated in appellee's complaint. Appellant demurred to the complaint. The demurrer was overruled and he excepted. He assigns that ruling as error. His contention is, that the complaint shows upon its face that appellee was not a trustee of an express trust at the time the subscription paper was signed, because it is alleged that he was appointed as treasurer on the first day of September, 1877, and the paper is dated in August, 1877. It is alleged, however, that he signed the paper as it is, and that is admitted by the demurrer.

Appellee is named in the paper as the treasurer, and the person to whom payments were to be made. It is not shown by any averment that appellant, or any other of the sub-

scribers signed the paper on the day of its date. It must be held, therefore, that when appellant signed the paper appellee was the duly appointed treasurer to collect the amounts subscribed. The paper itself and the averments of the complaint show that appellee was to collect and hold the money in trust for the congregation, and hence he was the trustee of an express trust, and may maintain an action to collect the amounts subscribed without joining the *cestui que trust.* R. S. 1881, section 252; *Dix* v. *Akers,* 30 Ind. 431; *Musselman* v. *Cravens,* 47 Ind. 1; *Wolcott* v. *Standley,* 62 Ind. 198; *Weaver* v. *Trustees, etc.,* 28 Ind. 112; *Holmes* v. *Boyd,* 90 Ind. 332; *Watkins* v. *Eames,* 9 Cush. 537.

Appellant further contends, that the written instrument above set out, and upon which this suit was brought, is a joint contract, and that hence all of the other subscribers should be made defendants.

It is a cardinal rule of construction, that contracts shall be so interpreted as, if possible, to arrive at and carry out the intention of the contracting parties. In doing this reference should be had to the words used, and they should, if possible, be given their literal and usual signification. But it is equally important that the contract shall be considered as a whole, and if upon such consideration the intention of the parties becomes apparent, it must prevail over the literal interpretation of detached words, phrases and clauses. Bishop Contracts, section 575; *Irwin* v. *Kilburn,* 104 Ind. 113; 1 Wait's Actions and Defences, 116.

The contention that the contract here is joint, rests upon these words: "We, the undersigned, promise to pay the following subscriptions for a new church," etc. These words, of themselves, are not sufficient to settle the interpretation that shall be given to the contract. As said by Mr. Addison, "When the parties engage for the performance of distinct and several duties, mere words of plurality, such as 'we bind ourselves,' will not make the contract joint." 1 Addison Con. (Am. ed. by Morgan) 86.

If the portion of the contract relied upon by appellant were, " We, the undersigned, promise to pay the following subscriptions set opposite our names," there would be no room to doubt that the contract would be several, and that each subscriber, and he alone, would be liable for the amount set opposite his name. *Connecticut, etc., R. R. Co.* v. *Bailey,* 24 Vt. 465 ; *Erie, etc., R. R. Co.* v. *Patrick,* 2 Abbott App. Cas. 72 ; S. C., 2 Keyes, 256 ; 1 Wood R. W. Law, p. 57 ; *Price* v. *Grand Rapids, etc., R. R. Co.,* 18 Ind. 137.

In the case last above, the subscription sued upon was in these words : " We, the undersigned, promise to pay * * * $25 for each share of stock opposite each of our names," etc. The words " opposite each of our names " constitute the only difference between that subscription and the one under consideration. With this difference, the promise is in the same terms, and is as much a joint promise as in the case before us. In that case it was said : " These stock subscriptions, though in form joint contracts, are intended to be, and are to be treated as several, and each stockholder as liable simply for the amount opposite his own name," etc.

In the case before us, there is no statement as to the amounts opposite each name of the subscribers, but opposite each name are the amounts subscribed by the different subscribers. These amounts vary from five hundred to ten dollars, as each subscriber felt inclined to give. The paper and the manner of the subscriptions as clearly indicate the intention by all the parties that each subscriber should be liable, and only liable, for the amount by him subscribed, as if the words " opposite each of our names " had been used.

The paper contains an exhortation to each individual member to assist, thus showing that whoever might subscribe would only be expected to pay the amount that he might put down opposite his name. Where a person signed the paper and put down opposite his name the amount subscribed, he just as plainly declared that that was the amount for which he was to be liable, as if in the body of the paper it had been

stated that each subscriber was to be liable for the amount opposite his name. See *Erie, etc., R. R. Co.* v. *Patrick, supra.*

It would be doing violence to the manifest intention of the contracting parties, as plainly indicated by the paper, and the manner in which the subscriptions were made, to hold that the person who subscribed ten dollars is liable for the whole amount subscribed. We hold, therefore, that the court below did not err in overruling the demurrer to the complaint, and in striking out the answer in abatement setting up a non-joinder of parties defendants.

The fourth assigned error is, in substance, that the court below erred in sustaining a demurrer to the second paragraph of appellant's answer. In that paragraph appellant set up that appellee, as trustee, had not the legal right and capacity to maintain this action upon the subscription paper, for the reason that at the time he (appellant) made his subscription thereon, appellee was not named therein as the payee thereof, and that his name as payee was subsequently inserted, without the knowledge or consent of appellant.

The only argument in appellant's brief in support of this assigned error is as follows : " We think the fourth assignment of error is presented by the first and third causes of demurrer to the complaint. The argument made applies with equal force to the court's action in sustaining the demurrer * * to the second paragraph of answer."

This does not fulfil the requirements of the rules of this court upon the subject of briefs. The first and third causes of demurrer to the complaint questioned the sufficiency of facts stated, and the right of appellee to maintain the action. The complaint is based upon the written subscription, which is perfect upon its face, appellee being named therein as the treasurer, to whom payments were to be made. The answer under consideration alleges facts to show that after appellant made his subscription, there was a change in the subscription paper, by the insertion of appellee's name as the payee. Hence the argument as to the sufficiency of the complaint,

and the right of appellee to maintain the action as shown therein, is not, and can not be regarded as an argument in support of the answer, nor in support of the fourth assigned error.

No reasons are stated, nor are authorities cited in support of the answer. Neither are reasons stated or authorities cited in support of the fourth assigned error.

It has been many times held by this court, that, without such a brief as the rules require, alleged errors will not be passed upon. *Liggett* v. *Firestone*, 102 Ind. 514; *Pratt* v. *Allen*, 95 Ind. 404, and cases there cited.

We may remark in passing, however, that the alleged error in sustaining the demurrer to the second paragraph of the answer, if an error, was apparently a harmless one, because the facts therein set up were admissible, and were admitted, so far as appellant could furnish proof, under the fourth paragraph of the answer to which the demurrer was overruled. The rule is well settled, that the erroneous sustaining of a demurrer to a good paragraph of an answer, will be regarded as a harmless error, if there is another paragraph under which the same facts may be proven. *Mason* v. *Mason*, 102 Ind. 38; *Luntz* v. *Greve*, 102 Ind. 173; *Epperson* v. *Hostetter*, 95 Ind. 583 (587); *Moore* v. *Boyd*, 95 Ind. 134; *Johnson* v. *Putnam*, 95 Ind. 57; *Fuller* v. *Wright*, 59 Ind. 333; *DeArmond* v. *Stoneman*, 63 Ind. 386; *McGee* v. *Robbins*, 58 Ind. 463.

Appellant's learned counsel direct much of their argument to the instructions which they claim were given by the court below, and which they contend are erroneous.

Appellee's counsel contend that the instructions are not in the record, so as to present any question to this court. This contention can not be disregarded. They are not brought into the record by a bill of exceptions, nor are they a part of the record, under sections 533 and 535, R. S. 1881. The clerk has copied into the record what he denominates "Instructions of the court to the jury," but there is nothing to show that they were filed as a part of the record. As said

in the case of *O'Donald* v. *Constant*, 82 Ind. 212: "The transcript contains no copy of the clerk's notation of the filing, nor any recital that they were filed." Section 533, *supra*, provides that all instructions given by the court must be signed by the judge and *filed*, together with those asked by the parties, as a part of the record. It has been held in a number of cases, that to make instructions a part of the record without a bill of exceptions, they must not only be excepted to as provided by section 535, *supra*, but they must also be signed by the judge and *filed* as provided by section 533, *supra*. *Olds* v. *Deckman*, 98 Ind. 162, and cases there cited; *Elliott* v. *Russell*, 92 Ind. 526, and cases there cited; *Supreme Lodge, etc.,* v. *Johnson*, 78 Ind. 110. This court, of course, can not change or vary the requirements of the above statutes.

It is further contended by appellant, that the verdict is not sustained by sufficient evidence, and is contrary to law. The jury found, in answer to interrogatories, that after appellant had made his subscription upon the paper, there were inserted before the word "treasurer," the words, "payments to be made to John Wheeler, Esq.," and that after appellant had received notice of the change, he promised to pay his subscription, acknowledging it as a debt due from him.

The evidence is conflicting, but it tends to sustain the findings of the jury. There is also evidence which tends, in a slight degree, to show that appellant was present when the above words were inserted, and made no objections.

The evidence very strongly tends to show that after the subscription list had been completed, the bishop of the diocese visited the church, and at a meeting where the subscribers, including appellant, were present, announced that the object of his visit was to examine the subscription list, and thereby determine as to whether or not a new house could be and should be built; that the bishop, before reading the subscription paper aloud, announced that if there was any subscriber

who did not intend to pay his subscription, he wanted him to answer to his name, and give the reasons for not paying; that after making this announcement the bishop read aloud the subscription paper in its present form, and called the names of the subscribers, and that appellant made no response, nor did any other subscriber; that, relying upon the subscriptions and the good-faith of the subscribers, debts were subsequently contracted, and the house built; that the whole amount subscribed is needed in the payment of the debts contracted in the building of the house; and that some months after the above meeting, appellant, at different times, promised and agreed to pay the amount of his subscription. Finally, and after the church had incurred debts in the erection of the house upon the faith of the subscriptions, appellant refused to pay, upon the ground that there was a disagreement between his wife and the priest.

This evidence, with the other evidence in the case, we think, is entirely sufficient to justify the jury in finding that he ratified and adopted the contract of subscription as it now exists. Upon the faith of the subscriptions the church proceeded in the contracting of debts and the expenditure of money in the building of the house. Appellant can not now refuse to pay his subscription without violating the principles of honesty and fair dealing. His time to have spoken, and to have objected, was when the bishop read the subscription paper in his hearing, called the names of the subscribers, and invited objections from them. *Watkins* v. *Eames*, 9 Cush. 537.

With this evidence before us, we do not find it necessary to decide as to whether or not the signing and delivery of the subscription paper, with a blank therein before the word "treasurer," authorized the holder to insert in such blank the name of appellee as such treasurer; nor whether or not the insertion of appellee's name in that blank, if without appellant's consent, constituted a material alteration of the instrument. Nor is it necessary to enter upon the debatable ground

The Board of Comm'rs of Putnam Co. v. The State, *ex rel.* Hord, Att'y Gen'l.

as to whether or not, if the insertion of appellee's name without appellant's consent was a material alteration, his ratification and adoption of the contract as altered constituted a new contract, superseding the old one; or as to whether or not his ratification related back to the date of the signing. It is enough that long before this action was commenced he ratified and adopted the contract as it now exists, and by his silence when he ought to have spoken, and by his promises when he might have objected, he made the contract as it now exists, his contract. Upon the faith of this contract, the other party has expended money and incurred debts in the building of the house. It is too late now for appellant to repudiate the contract and escape liability, upon the sole ground that appellee's name as payee and treasurer was inserted in the blank after he had made his subscription.

Objection is made to the form of the judgment, but as no objection was made below, it can not be made in this court for the first time. *Ludlow* v. *Walker*, 67 Ind. 353; *Powers* v. *Johnson*, 86 Ind. 298, and cases there cited; *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510, and cases there cited.

As the record presents no error for which the judgment should be reversed, it is affirmed, with costs.

Filed March 23, 1886; petition for a rehearing overruled June 2, 1886.