No. 31,474

GOLDEN BELT LUMBER COMPANY, *Appellee* and *Cross Appellant,* v. R. W. KLINZMAN et al., *Defendants;* A. F. MOLZAHN, *Appellant* and *Cross Appellee.*

(28 P. 2d 736.)

Opinion filed January 27, 1934.

*E. S. Rice* and *W. S. Rice,* both of Smith Center, for the appellant.

*R. P. Evans* and *George Clammer,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to foreclose a mechanic's lien, the principal contention being the priority between the mechanic's lienholder and a defendant who advanced the purchase money for the real estate on which the improvements were made. The evidence showed and the court found that defendant Klinzman contemplated purchase of the real estate on which the improvements were made, but was unable to finance the transaction except with the help of his relative, Molzahn. On August 19, 1931, Molzahn advanced $500 on the purchase price, and the seller executed a deed in blank, which was deposited in escrow. On August 25, 1931, Molzahn paid the balance of the consideration, his name was in-

serted in the deed, and on August 26, 1931, it was filed of record. At the time of the final payment a contract in writing was executed between Molzahn and Klinzman whereby Molzahn agreed to convey the land to Klinzman upon payment of the $2,400 and interest, the contract providing in part:

"The parties of the first part agree that should second parties make improvements upon said land that all improvements so made shall remain the property of the second parties."

It is here remarked that the pleadings and evidence do not show when this contract was recorded, and neither is it alleged that plaintiff had any express or implied knowledge of it. It is stated in the briefs that it was filed December 15, 1932.

The court's original findings were modified, on motion for a new trial, and the latter part of the findings are now, in substance, as follows:

"5. That on August 20, 1931, immediately following the tentative agreement for the purchase of the premises aforesaid, Klinzman and Molzahn went together to the place of business of plaintiff in Kensington, and Molzahn advised the agent and representative of plaintiff that Klinzman had purchased the land in question and that there were no improvements thereon, and that improvements would be necessary and expressed the desire that he would like to see plaintiff sell the job. At this time plaintiff knew nothing of the arrangements heretofore set out concerning the purchase of the land in question, but later did furnish the material for improvements, relying upon the representations and statements of Molzahn concerning the ownership of the land in question and his express wish that he would like to see plaintiff sell the job, and plaintiff, relying thereon, did furnish materials as set out in its petition for a dwelling house and for a barn.

"A. No improvements except the dwelling house were discussed by plaintiff Klinzman and Molzahn on August 19, 1931.

"B. Plaintiff thereafter, and on or about the 25th day of August, made an estimate of the materials for said house and gave the same to Klinzman about the 27th day of August, and thereafter about the 29th day of August, Klinzman agreed to buy the lumber for said house from plaintiff, the first materials for which were furnished by plaintiff on September 22, 1931. That the cost of said material was $550.

"C. The defendant Molzahn took no part in the negotiations or dealings of Klinzman and plaintiff in reference to the materials purchased by Klinzman from plaintiff at any other time except on the 19th day of August, at which time Molzahn did not intentionally mislead or deceive plaintiff.

"D. That in the fall or winter following August, 1931, when the house in question was partly finished, further negotiations were had between Klinzman and the plaintiff for additional materials for building a barn on the premises in question, by Mr. Klinzman, which materials were furnished by plaintiff and included in their claim for a mechanic's lien set out in its petition."

In the first instance the court had concluded that plaintiff was entitled to a first lien for the entire amount of his claim, but on motion for a new trial, and consistent with its findings, it found that plaintiff should have judgment against Klinzman for $1,289.15 and interest and that Molzahn have judgment against Klinzman and wife for $2,548 and interest; that plaintiff have a first lien upon the real estate, exclusive of improvements, for $566.26; that Molzahn have a second lien upon said real estate, exclusive of improvements, for $2,548, and that plaintiff for the balance of its judgment in the sum of $722.89 have a first lien on the improvements and a third lien on the real estate, and entered judgment accordingly, and that if default in payments of the judgments be made that the lands and the improvements be sold separately and the proceeds applied conformably to the judgments.

Both parties appeal. The defendant Molzahn served his notice first and will be referred to as the appellant.

An examination of the record shows that the court's findings of fact are supported by the evidence, except that it finds the amount of materials in the house was $550, while the witness Browning, who sold the materials, estimated their cost at $530. There is nothing to sustain the finding of $550. The date August 19, 1931, in the findings A and C above should be August 20, 1931. There is no contention that the appellant acquired any lien on the improvements, and therefore that feature of the case need not be discussed.

Under the circumstances the only question for decision is whether the appellant's deed, which is in legal effect a mortgage and is so referred to hereafter, is prior to the lien of appellee, and if so, to what extent.

There can be no dispute that appellant's mortgage is to secure the purchase price. The general rule is that such a mortgage given at the time the property is acquired and as a part of the entire transaction takes precedence of prior judgments and existing and subsequent liens against the mortgagor. On the other hand, it has been held that purchase-money mortgages are subordinate to liens for improvements authorized by the mortgagee or done with his knowledge and consent, or where, by his acts and conduct, he has estopped himself to assert priority. (See *Noll v. Graham,* 138 Kan. 676, 683, 27 P. 2d 277, and the cases cited therein. Also, see 40 C. J. 287, 299.)

Appellant argues that appellee had to take notice of the record of

the deed, and must be held to have dealt with Klinzman with full notice of the extent of his ownership in the land. However sound such a contention might otherwise be, it cannot avail here. On the day Klinzman arranged to purchase the farm and appellant made the initial payment of $500, and when the deed, blank as to the name of the grantee, was put in escrow, appellant, who was personally known to appellee's manager, Browning, introduced Klinzman, who was a stranger to Browning, and stated that Klinzman had purchased the farm which had no improvements on it, that he was góing to have some improvements on it, and he would like to see Browning sell the job. Why, under the circumstances, need Browning make any further inquiry as to Klinzman's ownership or appellant's interest? On that day the deed had not been delivered and could not be recorded. On the strength of appellant's statement appellee furnished an estimate for the lumber and materials for a house, which the court finds was all that was discussed then, and a few days later sold the job. During that interval the purchase agreement was completed, the title taken in appellant's name, the deed delivered and recorded, and the agreement to sell, between Klinzman and appellant, completed.

In this situation appellee says appellant is estopped to deny Klinzman's right to create the lien, while appellant argues that a lien cannot be established by estoppel. It is true that a lien cannot be created by estoppel. The lien exists only when the statutory requirements have been met, and they were met here. However, the court found that appellee did furnish the materials, relying on appellant's statements as to Klinzman's ownership, and appellant is now estopped to say that Klinzman was not the unqualified owner of the real estate. Appellant was under no obligation to introduce Klinzman to Browning or to tell him anything about the farm or the improvements or that Klinzman had bought, but, having done this, it was obligatory upon him that he disclose his own interest and, failing to do so, he cannot now say that appellee dealt with Klinzman at its peril. (41 C. J. 593 *et seq.*)

Appellee contends that it is entitled to a first lien for the full amount of the materials furnished, not only for the house, but for a barn and other improvements subsequently made. The trial court expressly found that no improvements except a dwelling house were discussed by Klinzman, Molzahn and Browning, and that further negotiations were later had between Klinzman and the plaintiff

for additional materials for a barn in the fall or winter after August 20. It must be held that the estoppel against Molzahn to assert the priority of his purchase-money mortgage is limited to the improvements discussed when he was present, and cannot be extended to cover those subsequently agreed on between the plaintiff and Klinzman.

This court is satisfied that the lower court's conclusions of law on the facts as found are correct. The finding as to the cost of materials in the house of $550 should be reduced to $530 and a new computation made as to the amounts of the first and third liens on the real estate, and judgment should be rendered accordingly.

And, as modified, the judgment of the lower court is affirmed.

HUTCHISON, J., not sitting.